UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

MICHAEL OWEN,                          )
                                       )
        *Petitioner*,                  )
                                       )    Case No. 1:20-cv-24
v.                                     )
                                       )
UNITED STATES OF AMERICA,              )    Judge Curtis L. Collier
                                       )
        *Respondent*.                  )

**M E M O R A N D U M**

Before the Court is Petitioner's motion to vacate his sentence under 28 U.S.C. § 2255 in

Case No. 1:12-cr-138. (Doc. 1.) The United States (the "Government") has responded in

opposition. (Doc. 12.) Petitioner then replied. (Doc. 15.) For the reasons set out below, the Court

will **DENY** Petitioner's § 2255 motion (Doc. 1) and will **DENY** Petitioner's motion for

reconsideration (Doc. 7). The Court will **DENY AS MOOT** Petitioner's motion for leave to

proceed *in forma pauperis* (Doc. 8) because no filing fee is required when a petition for the writ

of habeas corpus is filed by a person in federal custody. E.D. Tenn. L.R. 9.3(b).

I.      **BACKGROUND**

        A.      **Offense Conduct and Criminal Proceeding[1]**

        On November 3, 2012, a Soddy-Daisy police officer pulled over a vehicle in which

Petitioner and a seven-year-old girl were passengers. (Doc. 133 at 6.) Petitioner ran from the

vehicle carrying a black bag. (*Id.*) He shot at the officer with a short-barrel shotgun. (*Id.*) The

black bag Petitioner carried contained the components of a laboratory used to manufacture

---

[1] All citations in Section I.A are to the documents in Case Number 1:12-cr-138.

methamphetamine: a bottle, lighter fluid, tubing, coffee filters, lithium batteries, and an unknown white powder, among other items.  (*Id.* at 6–7.)

On November 27, 2012, a six-count superseding indictment charged Petitioner with attempting to manufacture a mixture and substance containing methamphetamine; possessing equipment, chemicals, products, and materials to manufacture methamphetamine; carrying and discharging a short-barrel shotgun in relation to drug trafficking crimes; possessing a firearm and ammunition as a convicted felon; and possessing an unregistered shotgun.  (Doc. 4 at 1–3.)

On June 19, 2017, Petitioner's previous counsel withdrew and was replaced by Gianna Maio ("Maio") of the Federal Defender Services of Eastern Tennessee, Inc.  (Doc. 100.)

After a years-long series of competency proceedings, on September 14, 2017, Magistrate Judge Susan K. Lee found by a preponderance of the evidence that Petitioner was competent to stand trial or enter a guilty plea.  (Doc. 115 at 20–21.)

On October 31, 2017, the Magistrate Judge denied Petitioner's motion for clarification of attorney representation and motion for substitute counsel.  (Doc. 121 at 1.)  The Court found that Petitioner did not provide any evidence of conflict of interest, breach of trust, or failure to communicate by Maio; rather, Maio had been communicating with and diligently working on behalf of Petitioner.  (*Id.* at 1–2.)

On December 20, 2017, Petitioner filed his signed plea agreement.  (Doc. 122-1.)  He pleaded guilty to attempting to manufacture methamphetamine and using, carrying, and discharging a firearm during or in relation to a drug trafficking crime.  (*Id.* at 2.)  The remaining four counts would be dropped.  (*Id.*)  He stipulated to the factual basis, which reads, in relevant part:

> During the defendant's flight, he dropped the black bag that he had taken from the car.  A later search of the bag revealed an active meth lab including a "shake" bottle,

lighter fluid, tubing, coffee filters, lithium batteries, and other items—all paraphernalia consistent with the manufacture of methamphetamine—and an unknown white powder.

(*Id.* at 3.)

On April 17, 2018, the presentence investigation report was filed. (Doc. 133.) Petitioner objected to the two-level enhancement pursuant to USSG § 2D1.1(b)(1) for possession of a dangerous weapon and to the six-level enhancement pursuant to USSG § 2D1.1(b)(14)(D) for methamphetamine manufacture that created a substantial risk of harm to the life of a minor. (Doc. 136 at 1.) Regarding the § 2D1.1(b)(1) enhancement, Petitioner argued there was insufficient information tying him to a hunting knife found at the arrest scene. (*Id.*) Regarding the § 2D1.1(b)(14)(D) enhancement, Petitioner argued he did not possess a large quantity of materials, he did not dispose of hazardous materials, the methamphetamine manufacture was not ongoing, and he did not possess the manufacturing materials in a highly populated area. (*Id.* at 2, 4, 5, 7.) The Government responded with a photo of the hunting knife and argued the "combination of toxic and volatile chemicals with the confined space and the girl's young age" rendered the § 2D1.1(b)(14)(D) enhancement appropriate. (Doc. 138 at 3, 9.)

On July 11, 2018, the Court sentenced Petitioner to 250 months' imprisonment, consisting of 130 months for attempting to manufacture methamphetamine and 120 months for using, carrying, or discharging a short-barrel shotgun during a drug trafficking crime. (Doc. 144.)

Petitioner timely appealed his sentence to the Court of Appeals for the Sixth Circuit. (Doc. 147.) On October 10, 2019, the Sixth Circuit issued its opinion and judgment order affirming Petitioner's sentence as substantively reasonable. (Doc. 153.)

3

### B. 28 U.S.C. § 2255 Petition

On January 17, 2020, Petitioner timely filed a motion pursuant to 28 U.S.C. § 2255 to request that his sentence be vacated and that he be resentenced. (Doc. 1 at 14.) In support of his motion, he claims he received ineffective assistance of counsel during his trial and subsequent appeal. (*Id.* at 15–16.) He also argues that one of the statutes under which he was sentenced is unconstitutionally vague and his 250-month sentence violates the Eighth Amendment's ban on cruel and unusual punishments because of his mental illness. (*Id.* at 5, 6, 8.)

On February 12, 2020, Petitioner filed a motion to appoint counsel. (Doc. 4.) On May 12, 2020, the Court denied the motion because Petitioner had not provided evidence of his indigency. (Doc. 6 at 2.) On June 2, 2020, Petitioner filed a motion for leave to proceed *in forma pauperis*, which includes a print-out listing his inmate trust account balance of $94.94. (Doc. 8 at 4.) He also filed a motion to reconsider the Court's denial of his motion to appoint counsel because he is indigent. (Doc. 7.)

## II. <u>STANDARD OF REVIEW</u>

Under 28 U.S.C. § 2255, a federal prisoner may move to vacate, set aside, or correct a sentence when the sentence imposed was in violation of the Constitution or federal law, the court was without jurisdiction to impose such a sentence, the sentence was in excess of the maximum authorized by law, or the sentence is otherwise subject to collateral attack. To prevail on a § 2255 motion, the petitioner "must allege one of three bases as a threshold standard: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001) (citing *United States v. Addonizio*, 442 U.S. 178, 185–86 (1979)). Thus, "a petitioner must clear a significantly higher hurdle than would exist on direct

4

appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982). This is in line with the historic meaning of habeas corpus, which is "to afford relief to those whom society has 'grievously wronged.'" *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

Rule 4(b) of the Rules Governing Section 2255 Proceedings requires a district court to summarily dismiss a § 2255 motion if "it plainly appears from the face of the motion, any attached exhibits, and the record of the prior proceedings that the moving party is not entitled to relief." *See* Rules Governing Section 2255 Proceedings in United States District Courts Rule 4(b).

If the motion is not summarily dismissed, Rule 8(a) of the Rules Governing Section 2255 Proceedings requires the district court to determine, after a review of the answer and the records of the case, whether an evidentiary hearing is required. *See* Rules Governing Section 2255 Proceedings in United States District Courts Rule 8(a). A petitioner's burden of establishing that he is entitled to an evidentiary hearing is relatively light. *See Martin v. United States*, 889 F.3d 827, 832 (6th Cir. 2018). If a petitioner presents a legitimate factual dispute, then "the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims." *Huff v. United States*, 734 F.3d 600, 607 (6th Cir. 2013) (quoting *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007)).

An evidentiary hearing is not required, however, if "the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Martin*, 889 F.3d at 832 (quoting *MacLloyd v. United States*, 684 F. App'x 555, 559 (6th Cir. 2017) (internal quotation marks omitted)). Nor does a petitioner's assertion of innocence, without more, entitle him to a hearing. *Martin*, 889 F.3d at 832.

5

## III.  <u>DISCUSSION</u>

The Court conducted an initial review of Petitioner's § 2255 motion and determined from its face that it should not be summarily dismissed.  (Doc. 6 at 1.)  Upon further review of the submissions of the parties, the record, and applicable law, the Court finds that a hearing is not necessary to resolve the motion.  The Court will first address Petitioner's motion to reconsider the Court's denial of his motion to appoint counsel before turning to each of Petitioner's arguments in his § 2255 motion.

### A.  Motion to Reconsider Denial of Appointment of Counsel

As an initial matter, Petitioner asks the Court to reconsider its denial of his motion to appoint counsel based on the "new facts" he submitted as part of his application to proceed *in forma pauperis*.  (Doc. 7 at 1.)  Petitioner states he is in fact indigent, as demonstrated by his application to proceed *in forma pauperis*, and he does not understand the law or court procedures and rules.  (*Id.*)  He states his access to the law library is limited by COVID-19 pandemic restrictions, and the only help he has received is from other inmates.  (*Id.*)

The Federal Rules of Civil Procedure do not expressly provide for motions for reconsideration.   However, a district court has the authority to consider a motion for reconsideration under certain circumstances, both before and after the entry of final judgment. Before final judgment, "[d]istrict courts have authority both under [federal] common law and Rule 54(b) to reconsider interlocutory orders and to reopen any part of a case . . . ." *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004) (citing *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991)).  Interlocutory reconsideration is proper when the movant shows either: "(1) an intervening change of controlling law; (2) new evidence available; or (3) a

6

need to correct a clear error or prevent manifest injustice." *Louisville/Jefferson Cnty. Metro Gov't v. Hotels.com, L.P.*, 590 F.3d 381, 389 (6th Cir. 2009) (quoting *Rodriguez*, 89 F. App'x at 959).

Here, Petitioner has failed to demonstrate that interlocutory reconsideration is appropriate. He states he brings "new facts," such as the print-out of the balance of his inmate trust account, but that is information that was available at the time he filed his initial motion. There also was no change in the controlling law, which provides, "Whenever . . . the court determines that the interests of justice so require, representation may be provided for any financially eligible person who is seeking relief under [28 U.S.C. § 2255]." 18 U.S.C. § 3006A(a)(2)(B). Along these lines, Petitioner has not demonstrated that the Court clearly erred in denying his motion to appoint counsel or that the interests of justice require the appointment of counsel. Petitioner's justification for appointed counsel "reflects a lack of legal knowledge or training that is typical of prisoner litigants, rather than anything of an exceptional nature." *United States v. Schroeder*, No. 3:10-cr-247, 2019 WL 134004, at *2 (M.D. Tenn. Jan. 8, 2019) (citing *Kirk v. Leibach*, No. 1:15-cv-1101, 2016 WL 6092713, at *1 (W.D. Tenn. Oct. 19, 2016)). His lack of financial resources alone does not justify appointment of counsel. *See Zack v. United States*, 9 F. App'x 394, 400 (6th Cir. 2001) ("[I]n § 2255 proceedings, there is no right to counsel."). The court retains discretion to appoint counsel based on factors such as the indigent party's ability to present the case, the viability or frivolity of the claims, and the nature and complexity of the case. *Id.* (quoting *Sellers v. United States*, 316 F. Supp. 2d 516, 522 (E.D. Mich. 2004)). Petitioner was able to file his motion, which included a detailed four-page addendum describing his ineffective- assistance-of-counsel claims and a thorough six-page reply to the Government's brief in opposition, without the assistance of counsel. Petitioner's case also is not factually or legally complex enough such that appointed counsel is warranted; in fact, his filings demonstrate both his understanding of the factual and legal

issues of his case and his ability to present his arguments forcefully and coherently. *United States v. Bates*, 2011 WL 13362669, at *1 (E.D. Ky. Jan. 25, 2011) (citing *LaMere v. Risley*, 827 F.2d 622, 626 (9th Cir. 1987)).

Accordingly, the interests of justice do not require the appointment of counsel in this case. The Court will **DENY** Petitioner's motion for reconsideration (Doc. 7).

### B.  Ineffective Assistance of Counsel

Ineffective assistance of counsel claims are governed by the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  To establish an ineffective assistance of counsel claim,

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id.* at 687.

"The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id.* at 688.  There is a strong presumption that counsel's conduct was reasonable. *Id.* at 689; *see also Sims v. Livesay*, 970 F.2d 1575, 1579–80 (6th Cir. 1992) ("The court should begin with a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." (internal quotations and citations omitted)).  Petitioner bears the burden of showing ineffective assistance of counsel. *Mason v. Mitchell*, 320 F.3d 604, 616–17 (6th Cir. 2003).   "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.  "An error by counsel, even if professionally unreasonable, does not

warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. While both prongs must be established in order to meet Petitioner's burden, if "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Id.* at 697.

## 1. Plea Negotiations

Petitioner argues that his attorney, Maio, offered ineffective assistance of counsel during his plea agreement negotiations because she allowed him to sign the plea agreement stating he possessed an "active meth lab" when in fact, "no testing was ever conducted to determine if the materials [Petitioner] possessed [were] actually active or not." (Doc. 1 at 15.) He contends the Government was "merely speculating" that there was a substantial risk of harm from the materials present in the vehicle. (*Id.*) He argues that he was severely prejudiced due to the inclusion of "active meth lab" because he received a sentencing enhancement pursuant to USSG § 2D1.1(b)(14)(D): "If Attorney Maio would have had the language changed in [Petitioner's] plea agreement to indicate that the bottle [Petitioner] possessed was 'inactive' or just an assembly of materials, he would not have been subject to the enhancement." (*Id.*) Petitioner then argues Maio should have prevented him from agreeing to the factual basis when it was never determined whether the materials were active or inactive. (*Id.*) He contends he was willing to accept responsibility for assembling the materials, but not for an active methamphetamine lab, and he never received an explanation of the potential penalties of agreeing to such a factual basis. (*Id.*) Petitioner reasons that the "active meth lab" language made a material difference at his sentencing because the Court referenced the language in his plea agreement, saying "we can't ignore what the Defendant agreed to in his plea agreement." (*Id.*) Thus, he concludes, Maio's "error in allowing him to sign a plea agreement which stated he possessed an active meth lab caused him harm," so

9

she was "clearly ineffective." (*Id.*) He argues he would have received a different sentence had "active meth lab" not been included in his plea agreement.

The Government responds that Petitioner stipulated in his plea agreement that he had an "active meth lab," so his attempt now "to walk back the admissions made in his plea agreement" is unavailing. (Doc. 12 at 6–7.) Regardless of what he asserts in his petition, he cannot disavow his sworn statement in open court that he possessed an "active meth lab." (*Id.*) Additionally, the Government argues Petitioner was not prejudiced by the inclusion of "active meth lab" because the Court made detailed factual findings regarding the contents of Petitioner's laboratory after hearing expert testimony on how methamphetamine is manufactured. (*Id.* at 7.) The Government states the Court agreed with Petitioner that the reaction had taken place elsewhere before the minor and Petitioner entered the vehicle, so the § 2D1.1(b)(14)(D) enhancement applied because the residue from the reaction remained extremely dangerous when transported with other flammable and hazardous materials. (*Id.*) The Government argues the enhancement would have applied even if the word "active" had not been in the plea agreement. Therefore, it argues, Petitioner has shown neither deficient performance by counsel nor prejudice from "active meth lab" being included in the plea agreement. (*Id.*)

Petitioner replies that Maio "misled [Petitioner] into accepting a plea that contained prejudicial language that resulted in a sentencing enhancement and informed him of the wrong sentencing Guidelines." (Doc. 15 at 2.) Petitioner contends that had he known an enhancement would apply, he would never have agreed to the factual basis. (*Id.*) He cites *Short v. United States*, 471 F.3d 686, 692 (6th Cir. 2006), for the proposition that a "defendant challenging his attorney's conduct during plea bargaining 'must show that counsel did not attempt to learn the facts of the case and failed to make a good-faith estimate of a likely sentence.'" (*Id.* at 1.) He also cites

*Magana v. Hofbauer*, 263 F.3d 542, 550 (6th Cir. 2001), for the proposition that counsel's "complete ignorance of the relevant law under which his client was charged, and his consequent gross misadvice to his client regarding the client's potential prison sentence, certainly fell below an objective standard of reasonableness under prevailing professional norms." (*Id.* at 2–3.) Additionally, he argues Maio should have presented an expert witness at sentencing to explain to the Court how his assembly of chemicals did not constitute an "active meth lab"; had an expert testified, he would not have received the § 2D1.1(b)(14)(D) enhancement. (*Id.* at 2.) Petitioner concludes, "Maio's performance fell below the objective standard of reasonableness and she rendered ineffective assistance of counsel. . . . [Petitioner's] sentence should be vacated." (*Id.* at 3.)

The record from Petitioner's criminal case directly contradicts his contention that he was "misled" by his counsel into signing the plea agreement. On January 3, 2018, the Court held a change of plea hearing where it confirmed—in open court and with Petitioner testifying under oath—that Petitioner's guilty plea was voluntary and that he was advised of his rights. (Doc. 130 in Case No. 1:12-cr-138.) Guided by the stringent requirements of Federal Rule of Criminal Procedure 11, the Court asked Petitioner whether he had read the plea agreement and discussed it with his counsel, whether the factual basis was accurate, and whether the signature on the plea agreement was his. The Court would not have accepted the plea agreement if it were not satisfied with Petitioner's understanding of his consent to be bound by the plea agreement he executed. Accordingly, the Court rejects Petitioner's claim that he was misled into signing the plea agreement.

The Court also finds that Maio behaved objectively reasonably and competently. Neither *Short* nor *Magana* supports Petitioner's allegation that Maio rendered ineffective assistance of

counsel. In fact, *Short* states, "no authority supports the argument that the acceptance of an allegedly unfavorable plea bargain creates an additional category of per se ineffective assistance that would relieve him of the burden of demonstrating actual prejudice." 471 F.3d at 693. The *Short* court rejected the petitioner's claim of ineffective assistance of counsel even when petitioner's counsel allegedly advised him to accept a plea agreement requiring him to plead guilty to a more severe charge than he was indicted for. *Id.* at 692–93. In *Magana*, the petitioner's counsel thought that sentences for different counts could not run consecutively, only concurrently, and he told his client that he would get ten years' imprisonment when the ten years' imprisonment was actually the mandatory minimum for the charged counts. 263 F.3d at 549. Here, Petitioner can point to no such facts indicating he received inadequate or misleading advice during his plea negotiations. During his sentencing, Maio argued that the "active meth lab" language in his plea agreement does not necessarily mean that the § 2D1.1(b)(14)(D) enhancement is warranted. (Doc. 151 at 55–56 in Case No. 1:12-cr-138.) Petitioner makes a conclusory allegation that Maio did not know the facts of his case, but without more evidence, habeas relief is unwarranted.

Next, Petitioner was not prejudiced by the inclusion of the "active meth lab" language in his plea agreement. At sentencing, the Court noted, "you can take out 'active' and just say 'meth lab'" in regards to the backpack of equipment Petitioner was carrying during his arrest. (*Id.* at 58.) Both Petitioner and the Government agreed Petitioner had manufactured methamphetamine at some point prior to getting into the vehicle with the minor. (*Id.* at 82.) The Court reasoned it was immaterial when or where the actual methamphetamine manufacture had occurred because the danger to the child arose out of the "close confines of the vehicle" they were traveling in and because "of the movement of the vehicle" (such as hitting a pothole) possibly triggering an explosive chemical reaction. (*Id.* at 83.) The Court concluded, "But any travel in the vehicle with

12

the pot in the condition the Court just described would be dangerous. So the child was exposed to the possibility of extreme injury during the entire drive with the backpack and the defendant and the lab and the other materials in the drive." (*Id.* at 85.) Significantly, the "Court ha[d] not concluded that the defendant was actually manufacturing methamphetamine in the vehicle," yet the Court concluded the enhancement was appropriately applied. (*Id.* at 85–86.) In short, the application of the § 2D1.1(b)(14)(D) enhancement did not hinge on the inclusion of "active meth lab" in Petitioner's plea agreement. Petitioner cannot demonstrate that he was prejudiced, and so his claim of ineffective assistance of counsel fails.

### 2. Sentencing

Petitioner next argues that Maio provided ineffective assistance of counsel during his sentencing. (Doc. 1 at 16.) He contends that Maio failed to present expert witnesses at his sentencing to demonstrate his "lengthy history of psychiatric illness." (*Id.*) He argues that an expert could have explained why he was prescribed, among other antipsychotic medications, Risperdal (brand name risperidone), Seroquel (brand name quetiapine), and Zyprexa (brand name olanzapine), which he says are medications "only prescribed for people with a legitimate mental health diagnosis." (*Id.*) Furthermore, an expert could have explained his diagnoses of schizoaffective disorder, depression, amnestic disorder from a head injury, intermittent explosive disorder, an unspecified personality disorder, and bipolar disorder, in addition to his history of psychosis starting from when he was eight years old. (*Id.*) Therefore, he argues, he was severely prejudiced by Maio's failure to bring in a mental health expert to explain his mental health problems at sentencing in order to make him eligible for a downward departure or variance. (*Id.*)

The Government responds that Maio had "vigorously argued at sentencing that [Petitioner's] lengthy history of mental illness entitled him to a downward variance." (Doc. 12 at

8.)  The Government quotes instances in the sentencing transcript where Maio had informed the Court of how Petitioner first received psychiatric treatment when he was nine years old, all of the diagnoses that Petitioner named in his petition, and his Zyprexa, Seroquel, and Risperdal prescriptions.  (*Id.*)  And Maio had discussed reports from the many mental health professionals who had evaluated Petitioner.  (*Id.*)  The Government also argues, "If anything, an expert may have *hurt* [Petitioner's] case because [Petitioner] was repeatedly found to be malingering.  And because the Court found that a within-Guidelines sentence was appropriate *notwithstanding* [Petitioner's] mental illness, further testimony about his mental illness would not have affected the outcome of the proceeding."  (*Id.*)  Thus, the Government argues, Petitioner failed to demonstrate that Maio's performance was deficient or that he suffered prejudice.  (*Id.*)

Petitioner's reply repeats verbatim the arguments he presented in his petition.  (Doc. 15 at 3.)  For the sake of economy, the Court will not repeat them here.  Petitioner argues that Maio was ineffective "for failing to conduct a thorough sentencing-phase investigation" and "for failing to present additional mitigating evidence of [his] psychiatric illnesses."  (*Id.* at 3–4.)  He argues that he was prejudiced because he did not receive the downward variance he was "entitled" to.  (*Id.* at 4.)

The Court agrees with the Government.   A defendant is never *entitled* to receive a downward variance: the sentencing court retains discretion to grant or deny a downward variance or departure after satisfying its obligation to address the parties' arguments.  *United States v. Coffer*, 860 F. App'x 416, 419 (6th Cir. 2021); *see also United States v. Mapp*, 311 F. App'x 738, 739 (6th Cir. 2008) (finding the district court did not err in refusing to grant a downward variance when the defendant's sentence fell within the Guidelines range).  The sentencing court "is not

required to grant a defendant's motion for a downward variance whenever a defendant suffers from such [mental] illness." *United States v. Owen*, 940 F.3d 308, 317 (6th Cir. 2019).

Petitioner's counsel had duly filed a motion for a downward variance covering all of the arguments Petitioner makes in his habeas petition. (Doc. 141 in Case No. 1:12-cr-138.) Later, during sentencing, Maio started her argument for the variance by highlighting Petitioner's three-week institutionalization for inpatient psychiatric care at the age of nine. (Doc. 151 at 88 in Case No. 1:12-cr-138.) She stated how Petitioner's mother confirmed he started experiencing auditory command hallucinations at the age of thirteen. (*Id.*) She emphasized how "noteworthy" it is that he was admitted to Moccasin Bend Mental Health Institute in Chattanooga, Tennessee, eleven times, given the institute's limited inpatient beds and treatment resources. (*Id.* at 89–90.) During those hospitalizations, he was diagnosed with schizoaffective disorder, bipolar disorder, and antisocial personality disorder. (*Id.* at 90–91.) Maio also informed the Court of Petitioner's "long-reported history of self-harm and cutting and suicidal thoughts." (*Id.* at 94.)

Significantly, during her response to the Government's objection to Petitioner's requested downward variance, Maio presented to the Court all of the information that Petitioner now claims she did not present:

> I just wanted to make sure that I had a complete list of all the diagnoses that in fact [Petitioner] did receive. Those include schizoaffective disorder; depressed and amnestic disorder secondary to closed head injury; rule out schizophrenia; bipolar disorder; intermittent explosive disorder; and personality disorder, not otherwise specified. [Petitioner] was prescribed Risperdal, Seroquel, and Zyprexa, along with other antipsychotic medication. These are trained professionals. If they felt as though [Petitioner] was someone who was entirely fabricating, who suffered no illness whatsoever, I don't think they would put their professional degrees on the line by writing a report and signing their names by diagnosing him with illnesses and prescribing him antipsychotic medications.

(*Id.* at 103–04.)

15

This demonstrates there was no "missing" evidence—including expert witnesses—that would have changed the outcome of Petitioner's motion for a downward variance. Furthermore, during sentencing hearings, it is the Court's longstanding practice to limit witness testimony to factual disputes with the potential to affect a defendant's Guidelines range. A variance, which occurs when a judge imposes a sentence above or below the final Guidelines sentencing range, does not alter the Guidelines range. *United States v. Rangel*, 697 F.3d 795, 801 (9th Cir. 2012). Maio, aware of the Court's rules, performed reasonably in not attempting to present expert witnesses who would not have been permitted to testify at Petitioner's sentencing.

After hearing Maio's detailed and thorough presentation in support of the variance, the Court did "conclude that the defendant does suffer from a mental illness." (*Id.* at 105–06.) But, after considering all of the 18 U.S.C. § 3553(a) factors, the Court also concluded that a downward variance would be inappropriate. (*Id.* at 107.) Now, with the benefit of hindsight, the Court does not perceive what difference expert witnesses would have made. In reaching its decision, the Court carefully considered all of the record, including the numerous expert psychiatric reports (Docs. 24, 31, 36, 57 in Case No. 1:12-cr-138), Maio's motion (Doc. 141 in Case No. 1:12-cr-138), and her comprehensive argument at sentencing.

In sum, Petitioner failed to demonstrate that Maio provided ineffective assistance of counsel during his sentencing. Maio performed reasonably in not calling an expert witness and Petitioner did not suffer prejudice.

### 3. Direct Appeal

Petitioner finally argues that his appellate attorney, Jennifer Niles Coffin ("Coffin") of the Federal Defender Service of Eastern Tennessee, Inc., offered ineffective assistance of counsel during his direct appeal. He argues Coffin failed to challenge the USSG § 2D1.1(b)(14)(D)

16

enhancement as ambiguous given the "unclear, confusing, and ambiguous" interpretation of its application note and commentary. (Doc. 1 at 16.) He argues he was severely prejudiced because if the enhancement were challenged, the Court would have been forced to decide whether the definition of "substantial risk" made the enhancement appropriate. (*Id.*) He notes that the Court of Appeals even mentioned how the enhancement was never challenged as ambiguous. (*Id.*)

The Government responds that the Court of Appeals described the § 2D1.1(b)(14)(D) enhancement as "[o]ne issue [that] is front and center in this appeal." (Doc. 12 at 9.) Thus, it argues, Petitioner is wrong about Coffin's allegedly failing to challenge it on appeal. Citing *Beckles v. United States*, 137 S. Ct. 886, 890 (2017), the Government argues that any challenge of § 2D1.1(b)(14)(D) as unconstitutionally vague would have been meritless because the advisory Guidelines are not subject to vagueness challenges. (*Id.*) So, Coffin's alleged failure to challenge the enhancement as vague—which would have been a meritless argument—is neither professionally unreasonable nor prejudicial. (*Id.*)

Petitioner replies to reiterate that the Court of Appeals noted that the § 2D1.1(b)(14)(D) enhancement was never challenged, which caused him to be severely harmed because he lost his appeal on that basis. (Doc. 15 at 4.)

The Court of Appeals did note that "no party has challenged § 2D1.1(b)(14)(D) as ambiguous," so it followed its corresponding Application Note identifying four factors for determining whether "substantial risk" was created. *Owen*, 940 F.3d at 313–14. The Court of Appeals also twice notes how "close" of a case it is as to whether Petitioner's methamphetamine lab posed a "substantial risk of harm to the life of a minor." *Id.* at 316. The discussion concludes, "While today's case may be closer to the margin, a preponderance of the evidence supports application of the § 2D1.1(b)(14)(D) enhancement." *Id.* at 317.

The Court agrees with the Government that Coffin did not provide ineffective assistance of counsel during Petitioner's direct appeal of his sentence. Petitioner wishes that Coffin had mounted a constitutional challenge to § 2D1.1(b)(14)(D), but such an argument would have been entirely frivolous. In 2017, over a year before Petitioner filed his opening brief in the Court of Appeals, the Supreme Court held "that the advisory Sentencing Guidelines are not subject to a vagueness challenge under the Due Process Clause." *Beckles*, 137 S. Ct. at 895. Hence any argument that § 2D1.1(b)(14)(D) is void for vagueness would have been squarely barred by existing binding authority. And it is well established within the Sixth Circuit that counsel is "not required to raise meritless arguments to avoid a charge of ineffective assistance of counsel." *Ludwig v. United States*, 162 F.2d 456, 459 (6th Cir. 1998). Petitioner did not demonstrate that Coffin's alleged inadvertence prejudiced him. In sum, Petitioner's claim that Coffin rendered ineffective assistance of counsel fails.

### C. Constitutionality of § 924(c)

Petitioner argues that his sentence under § 924(c)(1)(A)(iii) is now void because of the Supreme Court's 2019 decision in *United States v. Davis*, 139 S. Ct. 2319, 2336 (2019), which holds that § 924(c)(3)(B) is unconstitutionally vague. (Doc. 1 at 6.) He states that in *Davis*, the Government conceded that the defendant was entitled to a full resentencing if the Court found § 924(c)(3)(B) to be unconstitutionally vague. (*Id.* at 17.) Thus, because of his conviction under § 924(c), he too should receive a full resentencing. (*Id.* at 18.)

In response, the Government argues that Petitioner had pleaded guilty to using, carrying, and discharging a short-barreled shotgun during a drug trafficking crime, attempt to manufacture methamphetamine. (Doc. 12 at 10.) Therefore, his conviction was not affected by *Davis*, which did not change the definition of "drug trafficking crime," and so his claim for relief must fail. (*Id.*)

Petitioner replies that he does have a claim for relief under *Davis* because he faced heightened criminal penalties under § 924(c)(1)(A). (Doc. 15 at 4.) He contends he did not plead guilty to drug trafficking; instead, he pleaded guilty to attempting to manufacture methamphetamine. (*Id.*) Thus, he argues, the § 824(c)(1)(A) enhancement was erroneously applied to his sentence, causing him to be prejudiced severely. (*Id.*)

The Court agrees with the Government. Petitioner was sentenced under § 924(c)(1)(A)(iii) for the unlawful use, carry, and discharge of a short-barreled shotgun in relation to the drug trafficking crime of attempt to manufacture methamphetamine. (Doc. 83 at 1 in Case No. 1:12-cr-138.) He was not sentenced under § 924(c)(1)(A)(iii) in relation to a "crime of violence." The *Davis* Court held that it is the definition of "crime of violence" that is unconstitutionally vague—not the definition of "drug trafficking crime." 139 S. Ct. at 2336. *Davis* provides no relief to Petitioner. The Court further finds Petitioner's argument unavailing because he had unlawfully used, carried, or discharged a firearm during a federal "drug trafficking crime": attempting to manufacture a mixture and substance containing methamphetamine under §§ 846 and 841(a)(1), (b)(1)(C). (Doc. 83 at 1 in Case No. 1:12-cr-128.) Section 924(c)(2) provides, "the term 'drug trafficking crime' means any felony punishable under the Controlled Substances Act," which includes the felony of attempting to manufacture methamphetamine. In short, *Davis* does not apply to Petitioner.

### D.    Cruel and Unusual Punishment

Petitioner argues, "the lengthy sentence he received should be constituted as cruel and unusual punishment. [Petitioner's] lengthy history of psychiatric illness, suicide attempts, and self-harm demonstrates that . . . [h]e cannot psychologically handle a 250 month sentence." (Doc. 1 at 8.) He claims that he "was never sent to a medical center as the Court recommended, and is

not being properly treated for his illnesses." (*Id.*)  He requests he be resentenced to "significantly less time" and "he should only be sent to a medical facility so he can get the help he needs." (*Id.*)

The Government responds that Petitioner has failed to meet the high burden of establishing that his noncapital sentence was unconstitutional under the Eighth Amendment. (Doc. 12 at 10.) It argues that the Court considered Petitioner's mental illness when imposing his sentence and it is no longer than necessary to achieve the sentencing goals of 18 U.S.C. § 3553. (*Id.* at 11.) Additionally, the Court of Appeals for the Sixth Circuit affirmed Petitioner's sentence as substantively reasonable in *United States v. Owen*, 940 F.3d 308 (6th Cir. 2019). (*Id.*)

Petitioner replies to reiterate that he was diagnosed with many mental illnesses. (Doc. 15 at 5.)  He contends it is cruel and unusual punishment for him to be incarcerated for more than two decades, especially when he requires "intensive" mental health treatment. (*Id.*)

The Court agrees with the Government.  At the time of Petitioner's sentencing, the Court carefully and deliberately considered Petitioner's personal characteristics, which is reflected in the Court's consideration of the § 3553(a) factors during Petitioner's sentencing: "the Court does credit the defendant's argument that he does suffer from a mental illness.  The Court may not be able to specify exactly the type of the illness or the correct diagnosis, but the Court does conclude that the defendant does suffer from a mental illness." (Doc. 151 at 105–06 in Case No. 1:12-cr-138.)  Petitioner correctly notes the Court requested he be placed in a federal medical facility, but as the Court stated at sentencing, such a placement hinged on whether the specified facility had room for Petitioner and whether it had the ability to care for his condition. (*Id.* at 109–10.)

It is well established within the Sixth Circuit that "[a] sentence within the maximum set by statute generally does not constitute cruel and unusual punishment." *United States v. Layne*, 324 F.3d 464, 474 (6th Cir. 2003) (quoting *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000)).

Case 1:20-cv-00024-CLC-SKL   Document 17   Filed 12/16/22   Page 20 of 22   PageID #: 91

Petitioner was sentenced to 250 months' imprisonment, which falls far below the statutory maximum of life imprisonment provided by § 924(c). The Court of Appeals concluded that Petitioner's sentence was not substantively unreasonable, finding that the Court had balanced his mental illness against the seriousness of his criminal conduct. *Owen*, 940 F.3d at 317–18. Accordingly, Petitioner's sentence does not violate the Eighth Amendment's ban on cruel and unusual punishment.

## IV.    CONCLUSION

For the foregoing reasons, Petitioner's § 2255 motion (Doc. 1) will be **DENIED**. Petitioner's motion for leave to proceed *in forma pauperis* (Doc. 8) will be **DENIED AS MOOT** because a filing fee is not required when a person in federal custody files a petition for the writ of habeas corpus. E.D. Tenn. L.R. 9.3(b). Petitioner's motion to reconsider the Court's denial of his motion to appoint counsel (Doc. 7) will be **DENIED**.

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability ("COA") should be granted. A COA should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To warrant a grant of a COA, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Court finds that reasonable jurists could not conclude that Petitioner's claims deserve further review, as Petitioner has failed to make a substantial showing of the denial of a constitutional right and reasonable jurists would not debate the Court's finding that Petitioner is not entitled to relief under § 2255. Accordingly, a COA will not issue. It is therefore **CERTIFIED**, pursuant to Fed. R. App. P. 24(a), that any appeal in this matter by Petitioner is not

taken in good faith, and he may not proceed *in forma pauperis*. *United States v. Atkins*, 171 F. Supp. 2d 769 (W.D. Tenn. 2001).

**AN APPROPRIATE ORDER WILL ENTER.**

/s/_____
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**